DOE D. JAMES H. WRIGHT and MARY WRIGHT his wife *v.* ISAAC K. GOODEN, tenant in possession.

A devise by a father of four sons and seven daughters who survived him, first, to his eldest son Daniel five shillings to be raised and levied out of his estate, and to his son Andrew the tract of land whereon he now dwells during his natural life and no longer; to his son Martin all the tract of land whereon I now dwell, during his natural life and no longer, and that part of the tract of land whereon my son Joseph now lives, from the barn across the said tract, from the line next to the great road with the division fence down to Barnes' Branch, that part of said tract next to Moses Jackson's and John Voshell's land, during his natural life and no longer; to his son Joseph all the residue of said tract of land where he now lives, during his natural life and no longer; and further, at the decease of my sons, Andrew, Martin and Joseph all the said lands that I have given to them, I give unto my daughters Sarah, Mary, Esther, Ann, Letitia, Ansley and Patience, during their natural lives and no longer, and at the death of my said daughters, I give the before mentioned lands to my heirs forever. The will was made in 1782, probated in 1790 and Ansley, the last survivor of his sons and daughters named as devisees of the lands in the will, died on the 14th day of February, 1852.

Doe d. Wright and Wife *v.* Gooden.

*Held* that the limitation of the remainder at the death of his daughters to his heirs forever constituted a vested remainder in fee simple, and immediately vested on the death of the testator in his heirs at law.

THIS was a case stated from the Superior Court in and for Kent County with the question of law reserved for a hearing before all the judges of the Court of Errors and Appeals, and was heard before Saulsbury, chancellor, and Wootten, Houston and Wales, judges, Comegys, C. J., having been of counsel in the case.

The case stated which was in an action of ejectment was as follows:

John Rash, now deceased, was a resident of Kent County, State of Delaware.

He died about the twenty-fifth day of November, A. D., 1790, leaving his last will and testament which, after his death, was duly proved and allowed by and before the then register of wills, in and for Kent County, on the thirtieth day of November, A. D., 1790. The said will bears date the first day of July, A. D., 1782, when it was executed. At the time of the making his said will he had eleven children, one of whom to wit, Mary Rash, died in the lifetime of the testator, unmarried and without issue, and that the testator left to survive him ten children to to wit: Daniel Rash, Andrew Rash, Martin Rash, Joseph Rash, Sarah Shelton, Esther Rash, Ann Rash, Letitia Rash, Ansley Rash, and Patience Rash, as his only heirs-at-law. The testator by his said last will and testament, a certified copy of which is hereto appended and made a part of this case stated, did devise as therein mentioned. The said Ansley Rash married one William Whitby, and survived all her brothers and sisters except her brother Daniel Rash, who outlived her. Martin Rash died, leaving no issue to survive him. Andrew Rash died, leaving to survive him thirteen children to wit: Mason Rash, Robert Rash, Daniel Rash, Micah Rash, David Rash, Mary Rash, Rachel Rash, John Rash, Letitia Rash, Martin Rash, Hetty Rash, Sarah Rash and Andrew Rash. Letitia Rash, John Rash, Hetty Rash and Sarah Rash, last-named, died in the life-time of Ansley Whitby, leaving no descendants, who survived the said Ans-

Doe d. Wright and Wife *v.* Gooden.

ley Whitby; the others, being nine in number, either survived the said Ansley Whitby, or died leaving children who survived the said Ansley Whitby. David Rash, above-named as one of the children of said Andrew Rash, died in the life-time of said Ansley Whitby, leaving to survive him two children, to wit: Mary Rash, now Mary Wright, wife of James H. Wright, and plaintiff in this suit, and George Rash, as his only heirs at law. Joseph Rash, Sarah Shelton, Esther Rash, Ann Rash, Letitia Rash and Patience Rash, children of the testator, died in the life-time of said Ansley Whitby, leaving issue, who survived said Ansley Whitby, and that the said Ansley Whitby died on the fourteenth day of February, A. D., 1852, leaving children to survive her. Mary Rash, now Mary Wright, the plaintiff in this suit, was married to her husband, James H. Wright, on the fourteenth day of February, A. D., 1850, and has ever since remained under coverture. The said Andrew Rash, son of John Rash, the testator and father of David Rash who was the father of Mary Wright, the plaintiff in this suit, together with Joseph Rash, Daniel Rash, Esther Green, formerly Esther Rash, Letitia Beer, formerly Letitia Rash, Ansley Whitby, formerly Ansley Rash, and Patience Walls, formerly Patience Rash, made a deed to Martin Rash, conveying all their estate and interest whatsoever, to which they were entitled under any of the provisions of said will, or otherwise howsoever; said deed bears date the ninth day of March, A. D., 1803, and being of record in the recorder's office, at Dover, in Deed Book G., vol 2, Folio 254, etc., which said deed or the record thereof, is made a part of this case stated. Thomas Gooden is now in possession, and claiming title to the lands and premises for which this suit is brought to recover a part under said deed and subsequent conveyances.

It is agreed that if upon the foregoing facts the court shall be of opinion that the plaintiff is entitled to recover any part of the said lands in possession of the defendant, then judgment shall be entered for the plaintiff for such part as the court shall be of opinion that the plaintiff is entitled to, but if the court shall be of opinion that the plaintiff is not entitled to recover any part thereof in this suit, then judgment for the defendant.

### Doe d. Wright and Wife *v.* Gooden.

*In the name of God Amen,* I JOHN RASH, Senior, of Murder-kill hundred, in the County of Kent and State of Delaware, Farmer being in perfect health of body and of perfect memory, thanks be given to God, calling unto mind the mortality of my body, and Knowing that it is appointed for all men once to die, do make and ordain this my last Will and Testament. That is to say principally and first of all, I give and Recommend my soul into the hands of Almighty God that gave it and my body I Recommend to the Earth to be buried in Christian decent burial at the discretion of my Executor, Nothing Doubting, but at the General Resurrection I shall receive the same by the mighty power of God. And as touching worldly estate wherewith it has pleased God to bless me in this life, I give and devise and dispose of the same in the following manner and form :

*First.* I give unto my eldest son, Daniel Rash, the sum of five shillings, to be raised and levied out of my estate. Also, I give unto my son, Andrew Rash, that tract of land whereon he now dwells during his natural life and no longer, Reserving one acre of land where Joseph Newsom now dwells, and timber to support it. I give unto my son, Martin Rash, all that Tract of land whereon I now dwell, during his natural life and no longer, and I give unto my son, Martin Rash, that part of that tract of land whereon my son, Joseph, now lives, from the barns across the said Tract, from the line next to the great Road with the division fence down to Barnes's branch, that part of said Tract next to Moses Jackson's and John Voshell's land, during his natural life and no longer ; I give unto my son, Joseph Rash, all the residue of said Tract of land where he now lives, during his natural life and no longer ; and further at the decease of my sons, Andrew Rash, Martin Rash, and Joseph Rash, all the sd. lands that I have given to them, I give unto my Daughters, Sarah Shelton, and Mary Rash, Esther Rash, Ann Rash, Letitia Rash, Ansley Rash, & Patience Rash, during their natural lives and no longer, and at the death of my said daughters, I give the before-mentioned lands to my heirs forever. I give unto my daughter, Ansley Rash, and my daughter Patience Rash, and Letitia Rash, the sum of Thirty Pounds in Gold or Silver

Doe d. Wright and Wife *v.* Gooden.

money, to be raised and levied out of my estate, together with my household goods and chattels, and all the residue of moveable Estate, after my just debts are paid, except one Bed and furniture, one loom and Tackling, one horse and a woman's Saddle, one pott, one frying Pan, one Chest, one Cow and Calf, one ewe and Lamb, I give and my will is that it should be equally divided among all my daughters. And further I constitute, make, and ordain my son Andrew Rash the sole Executor of this my last Will and Testament, and do hereby disallow and revoke and disannul all and every Testament or Wills and Executors by me in any ways before named, Ratifying and Confirming this and no other to be my last Will and Testament. In Witness whereof, I have hereunto set my hand and seal Day of July in the year of our Lord One Thousand and Eighty-two.

JOHN + RASH. { SEAL }

his mark.

Signed, sealed, published and pronounced and declared by the said John Rash, as his last Will and testament, in presence of us, who, in his presence and in the presence of each other, have hereunto subscribed our names.

LAWRENCE HAMMOND, RIC'D MASON, AGNES MASON.

And now to wit, this second day of November, A. D., 1881, this case coming on to be heard before the Superior Court in and for Kent County, on the case stated, and the court considering that the questions of law arising thereon ought to be decided before all the judges, it is on application of both parties ordered and directed by the Court, that the said questions of law arising upon the said case stated, be reserved and be heard in the Court of Errors and Appeals.

J. P. COMEGYS,
*Chief Justice.*

*Day* for the plaintiffs. John Rash, the testator, made the will on the 1st day of July, 1782, and which was admitted to

probate on the 30th day of November, 1790; a deed was made'
to Martin Rash on the 9th day of March, 1803, duly recorded,
and he and his wife conveyed to Zadoc Lofland, by deed dated
23d day of August, 1839, duly recorded.  Isaac G. Lofland
purchased at a trustee's sale made under an order of the Orphan's
Court of the county, and Thomas Gooden purchased at a sale
made by the sheriff of the county, on the 3d day of September,
1872, duly recorded.  Ansley Whitby, formerly Ansley Rash,
a daughter of the testator, who took a life estate in the lands
devised under the will, survived all her brothers and sisters who
took life estates under it, and died on the 14th day of February,
1852.  At that time, Mary Wright and James H. Wright, the
plaintiffs in this action, were married and she has ever since
been under coverture.  She is the daughter of David Rash, who
was the son of Andrew Rash, who was the son of John Rash, the
testator.

The question reserved and presented involves the construction
of the will of the testator, and that question is did he mean to
give the remainder in the lands after the determination of the
estates for life to his three sons named in the devise in severalty,
and to his daughters for life as joint tenants, to such persons as
were his heirs-at-law at his own death, or to such persons as
would answer the description of his heirs at the death of the last
taker for life?  In construing a will the object of the court
is to ascertain, not the intention simply, but the expressed in-
tention of the testator, that is to say, the intention which the
will itself, either expressly or by implication declares, or (which
is the same thing) the meaning which the words of the will
properly interpreted convey.  The words and expressions used
are to be taken in their ordinary proper and grammatical sense,
unless upon so reading them in connection with the entire will,
or upon applying them to the facts of the case, an uncertainty
of meaning arises in the opinion of the court, in which case the
primary meaning of the words may be modified, extended or
abridged, and words may be supplied or rejected, in accordance
with the presumed intention, so far as may be necessary to re-
move or avoid the doubt or difficulty, but no further.  Tech-

Doe d. Wright and Wife *v.* Gooden.

nical words and phrases must be taken in their technical sense, unless a clear intention appears to use them in another sense, and that other sense can be ascertained. Hawk. on Wills, 1, 2, 3. And the intention of the testator must control in the construction if it violates a rule of law. Olney *v.* Hall, 21 Pick., 311 ; King *v.* Beck, 15 Ohio, 559 ; Bradhurst *v.* Bradhurst, 1 Paige, 331 ; Hileman *v.* Bonolaugh, 13 Pa. St., 344 ; Loddington *v.* Kime, 1 Ld. Ray., 203 ; Dod. Long *v.* Laming, 2 Burr., 1106 ; Hunter's Estate, 6 Pa. St., 97 ; Richardson *v.* Wheatland, 4 Met., 171 ; Braddeley *v.* Leppingwell, 3 Burr., 1541 ; Evans *v.* Astley, 3 Burr., 1581 ; Hoes *et al. v.* Van Hoeson, 1 Com., 120 ; Archer's case, 1 Rep., 66 ; Bagshaw *v.* Spencer, 1 Ves., 142 ; Darbison *v.* Beaumont, 1 Pr. Wms., 229 ; Legatt *v.* Sewell, 1 Pr. Wms., 87.

By this will the testator gave to his three sons, Andrew, Joseph and Martin Rash, an estate for life in severalty in all his lands, and an estate for life to all his daughters in joint tenancy. Hawk. on Wills, chap. 10, p. 111; 5 Del. Laws, 174; Act of Feb. 16, 1816; Hall's Dig., 167. It is clearly not an estate tail. The law of descent in this State. 1 Del. Laws, 288, 538; 2 *Ibid.*, 1172.

The fee devised to his heirs on the death of his daughters was a contingent remainder until the death of Mrs. Ansley Whitby, who was the survivor of all those who took an estate for life, and vested in such persons as were the heirs of John Rash at the death of Mrs. Whitby had he then died intestate, they being unascertained. Fearne on Cont. Rem., 3 Whart. Law Dic., 178 ; Richardson *et al. v.* Wheatland, 7 Met., 175. The particular estate of freehold could not be destroyed so as to affect the contingent remainder. 1 Del. Laws, 331 ; 2 Del. Laws, 1054 ; Dunwoodie *v.* Reed, 3 S. R., 435. If there are intervening estates and the remainder is contingent, it will be construed as having reference to those who shall sustain the relation of heirs at the time the estate vests in possession. Sears *v.* Russell, 8 Gray, 86 ; Rich *v.* Waters, 22 Pick., 563 ; Richardson *et al. v.* Wheatland, 7 Met., 169. If it is not a contingent remainder, it is an estate given to certain persons for life, with the fee to a

Doe d. Wright and Wife *v.* Gooden.

certain class of persons upon the happening of a certain event, the remainder remaining in the devisor until the event happens. 2 Des. Rep., 94; Hall *v.* Chaffee, 14 N. H., 239; Evans *v.* Godbold, 6 Rich. Eq., 38; 6 Cruise, 257; Doe d. McColley *v.* Lampleugh, 3 Houst., 461. The words " my heirs " are *designatio personarum,* and they take as purchasers under that designation. Richardson *et al. v.* Wheatland, 7 Met., 175; State *v.* Lyons, 5 Harr., 196; Baskin's Appeal, 3 Barr, 304; Doe d. Long *v.* Laming, 3 Burr, 1106.

Did the testator intend that such persons as were his heirs at his death, or did he mean such persons as should answer that description at the death of his last surviving daughter? Doe d. King and Wife *v.* Frost, 3 Barn. & Ald., 546; Hall *v.* Chaffee, 14 N. H., 220; 6 Cruise, 253. Where a life estate is expressly given it will aid much in arriving at the intention of the testator 6 Cruise, 253, 254, 257; Doe d. Long *v.* Laming, 2 Burr, 1106; Loddington *v.* Kime, 1 Ld. Ray., 204; Dunwoodie *v.* Reed, 3 S. R., 448; Clayton *v.* Clayton, 3 Binn., 476. If there is a gift to a person for life with remainder to the testator's relations, and the person taking the life interest is the sole next of kin at the death of the testator, the gift will be considered as referring to the person answering to the description at the death of the tenant for life. 2 Jarm. on Wills, 39, 40; Jones *v.* Colbeck, 8 Ves., 38. The object of the testator was to retain the property in his family as long as it was possible. Sears *v.* Russell, 8 Gray, 95; Long *v.* Blackall, 3 Ves., 486. If any other estate is given than that which the heir would if no will had been made, the person will take under the devise. 6 Cruise, chap. 8, § 14; Ellis *v.* Page, 7 Cush., 164; State *v.* Lyons, 5 Harr., 196. At what time were the persons to take the limitation over? Doe d. King and Wife *v.* Frost, 3 Barn. & Adol., 546; Doe d. Long *v.* Laming, 2 Burr., 1100; King *v.* Beck, 15 Ohio, 559; Porter *v.* Bradley, 3 T. R., 71; Hall *v.* Chaffee, 14 N. H., 215; Sears *v.* Russell, 22 Pick., 563; Evans *v.* Godbold, 6 Rich. Eq., 26. Courts will lay hold of the most trifling circumstance to give effect to the apparent intention of the testator in the construction of a will. Baddeley *v.* Leppingwell, 3 Burr., 1541; Evans d.

Doe d. Wright and Wife *v.* Gooden.

Brooke *v.* Astley *et al.*, 3 Burr., 1581 ; Hoes *et al. v.* Van Hoeson, 1 Com., 120 ; Ancaster *v.* Mayer, 1 Brown Ch., 462 ; Wilkenson *v.* South, 7 T. R., 551. There is no residuary clause in the will.

*Smithers* (*Ridgely* and *Massey* with him) for the defendant. A devise in remainder is always to be construed as creating a vested rather than a contingent estate, and where the devise over after a life estate is to the heirs of the testator, the word " heirs " must be held to refer to the persons who held that relation at the death of the testator, and who take vested interests transmissible by inheritance or alienable by deed or devise. And this result will not be affected by the fact that the tenant for life is one of the heirs. 1 Powell on Devises (note, 284), note, 290 ; 21 Law Libr., 167, 171 ; Holloway *v.* Holloway, 5 Ves., 399 ; Mortimer *v.* Slater, 7 Ch. Div., 322 ; Thesiger's Classification, 329 ; Mortimore *v.* Mortimore, 4 Ap. Ca., 448 ; Brown *v.* Lawrence, 3 Cush., 390 ; Childs *v.* Russell, 11 Met., 16 ; Minot *v.* Tappan, 122 Mass., 536 ; Dove *v.* Torr, 128 Mass., 38 ; 2 Houst., 235 ; 2 Jarm. on Wills, 87, 129, 132. And whenever it has been held otherwise, there will be found words in the devise which gives the land on some contingency expressed in it, as in the case of Richardson *et al. v.* Wheatland, 7 Met., 175, cited on the other side. There the testator devised land to his daughter, H., during her life, and to her husband, W., during his life, and at the decease of H. and W. to be divided among the heirs of each. It was held that the remainder after the termination of the estates of H. and W. was contingent until the death of H. and vested on her death in those who were then her heirs-at-law.

*Houston,* J., delivered the opinion of the court.

The testator, John Rash, being seized in fee of the several tracts of land mentioned in his will, devised them as follows : " First, I give unto my eldest son, Daniel Rash, the sum of five shillings to be raised and levied out of my estate. Also, I give unto my son, Andrew Rash, that tract of land whereon he now

Doe d. Wright and Wife *v.* Gooden.

dwells during his natural life and no longer, reserving one acre of land where Joseph Newsom now dwells, and timber to support it. I give unto my son, Martin Rash, all that tract of land whereon I now dwell, during his natural life and no longer, and I give unto my son, Martin Rash, that part of that tract of land whereon my son Joseph now lives, from the barn across the said tract, from the line next to the great road with the division fence down to Barnes' Branch, that part of said tract next to Moses Jackson's and John Voshell's land, during his natural life and no longer, I give unto my son, Joseph Rash, all the residue of said tract of land where he now lives, during his natural life and no longer, and further, at the decease of my sons, Andrew Rash, Martin Rash and Joseph Rash, all the said lands that I have given to them, I give unto my daughters Sarah Shelton and Mary Rash, Esther Rash, Ann Rash, Letitia Rash, Ansley Rash and Patience Rash, during their natural lives, and no longer, and at the death of my said daughters, I give the before mentioned lands to my heirs forever."

The will was made on the 1st day of July, 1782, and was duly probated on the 30th day of November, 1790, soon after the testator's death in the latter month. All his children, consisting of four sons and seven daughters, are named in the will, and all of them survived him with the exception of his daughter Mary, who died between the date of the will and his death unmarried. The daughter Ansley married William Whitby and survived all of her brothers and sisters, except her brother, Daniel Rash, the eldest son of the testator, and died òn the 14th day of February, 1852. His son, Andrew Rash, died leaving thirteen children, one of whom, David Rash, married and died in the life-time of Ansley Whitby, leaving to survive him two children, George Rash and Mary Rash, who intermarried with and became the wife of James H. Wright, and who now constitute the lessors of the plaintiff in this action of ejectment to recover the undivided share or portion of the lands devised over in the will after the termination of the life estates limited in it, to the heirs of the testator in fee simple, or of so much thereof as are now in the possession of the defendants.

Doe d. Wright and Wife *v.* Gooden.

The counsel for the plaintiffs has contended that this devise over of all the lands before mentioned, first, to the sons named in severalty as to each of the tracts given to them respectively during his natural life and no longer, and at their decease to the daughters named in joint tenancy during their natural lives, and no longer, and at the death of his said daughter, to his heirs forever, constitutes in law and in the intendment of the testator, a gift for life strictly to the sons and daughters named in the order prescribed, with a contingent remainder therein to the heirs-at-law of the testator, until the death of Ansley Whitby, the last survivor of the said sons and daughters and devisees for life named in the will, and that the fee devised in the land continued in abeyance until that event, and then vested only in such of the heirs-at-law of the testator as were living at that time, or such as would have constituted his only heirs-at-law had he died intestate at that time; and that the uncertainty as to who might constitute his heirs-at-law on the determination of all the life estates devised in the will by the death of the last survivor of the devisees for life named in it, constituted the remainder devised to the heirs at law of the testator a contingent, and not a vested remainder until that time, because until then the heirs-at-law who would be entitled to it could not be ascertained. This he contended was also the intention of the testator apparent upon the face of the devise, which must control the construction of it, and which clearly indicated that his intention was that the devisees for life should only take estates for life in the lands devised to them, because it was in each successive devise to them, expressly given to them during their natural life or lives, and no longer. And for the purpose of showing that such must be the construction of it, and to exempt it from the operation of the rule in Shelley's Case in order to effect the intention of the testator in the interpretation of the devise, we have been referred to several cases, American as well as English, supposed to be analogous to the case before us, to sustain his position and the construction contended for, in each of which, however, as the counsel on the other side in his reply observed and pointed out, it appeared that the devise in question was limited upon some evi-

Doe d. Wright and Wife *v.* Gooden.

dent contingency actually expressed or necessarily implied in it. But the cases referred to or the principle ruled in them can have no proper application to the question involved in this case, be-cause by the terms of it, and the terms of the rule in Shelley's case, such a devise as this has never been considered, either in England, or in this country, to be embraced within the meaning or operation of that well-known rule so long and firmly established as an axiom in the law of real property both in that country and in this State ; and which as stated in that case and recognized in all later decisions and by all commentators on it, is in the following terms, when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail, that always in such case the heirs are words of limitation of the estate, and not words of purchase. Shelley's Case, 1 Coke's Rep., 104. Or, in other words, according to the meaning and effect of it, in all such cases the words "heirs in fee or in tail," create a remainder in fee or in tail, which the law to prevent an abeyance, vests in the ancestor, who is tenant for life, and by the conjunction of the two estates he becomes tenant in fee or in tail, as the case may be ; and in either case the subsequent remainder to his heirs unites with and is executed on his estate for life. 4 Kent's Com., 215. So that in such a case the heirs in fee or in tail by the operation of the rule take the estate limited in remainder to them after the death of the ancestor and tenant for life by inheritance and descent from him, as his heirs in fee or in tail, and not as purchasers, or independent owners of it in their own right under the terms of the gift, grant or conveyance in the case.

Another writer of high authority on the subject, states the rule substantially the same, though in fuller and more ample terms, as follows : " When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or the heirs of his body, as a class of persons to take it in succes-

Doe d. Wright and Wife *v.* Gooden.

sion from generation to generation, the limitation to the heirs entitles the ancestors to the whole estate." 1 Pres. on Est., 263. Now, it is manifest from the very terms of the rule as thus defined that it can apply in no case except when the devise is of an estate of freehold in the premises to a person, as for his life, and the same are further limited in the devise, either mediately or immediately, by way of remainder to the heirs generally, or to the heirs of the body of that person who takes the estate of freehold and the particular estate on which the remainder depends, and of no other, because it is only in such a case that the words heirs of either description can be construed to be words of limitation and not words of purchase, or that such remainder can unite with and be executed on such particular estate of freehold in him, so as to constitute him owner in fee or in tail, as the case may be, of the premises under the rule. And, therefore, Mr. Jarman, in his work on wills, lays it down as essential to the operation of the rule in Shelley's case, when the limitation is to the heirs of the body on the determination of the preceding or particular estate, that the heirs of the body should proceed from the person taking that estate and from that person only. 2 Jarm. on Wills, 248. And the same is the case when the limitation is to the heirs general instead of to heirs of the body, it must be to the heirs of the person taking the particular estate only, and not to the heirs of any other person; for the rule can only apply and operate in either case when the limitation to the heirs of the body or to the heirs general can be executed on and united with the particular estate so as to give the taker of that both of the estates united in him and the inheritance by descent from him to the heirs of the body, or the heirs general, as the case may be, and thus to convert those words into words of limitation, instead of words of purchase, as they were prior to the establishment of the rule. But in the case before us the testator does not give the lands at the death of his daughters to their heirs, or to the heirs of his three sons to whom the preceding life estates in them was devised, but gives them to his own heirs in fee simple, and who on his death together with his son, Daniel, consisted of the three sons and six daughters

27

Doe d. Wright and Wife *v.* Gooden.

to whom he had given them for their lives as devised in his
will (the daughter, Mary, having died before him without issue).
It is therefore manifest that the rule in question could never
have applied to such a case as this, whether the gift or devise of
the lands at the death of his said daughters, to the heirs-at-law
of the testator, is to be considered a vested or a contingent re-
mainder, that is to say, whether that remainder is to be con-
sidered as having vested on the death of the testator in the said
four sons and six daughters who survived and then became his
ascertained heirs-at-law by force of the statute of descent which
made them such, or as having constituted a contingent remainder
until the death of Mrs. Whitby, the last survivor of said daugh-
ters, and as such, then vested only in such of the said sons and
daughters and heirs-at-law of the testator as were living at her
death.

I have been thus particular in stating the operation and ex-
tent of the rule in Shelley's case because the counsel for the
plaintiffs in his argument sought to exempt this case from the
operation of it solely on the ground, as he conceived that the
devise to the heirs of the testator at the death of said daughters,
was not a vested, but a contingent remainder of the description
which I have just mentioned. He also further contended and
cited numerous authorities with much better effect and success to
show that inasmuch as these estates were given by a last will
and testament, the construction of them is not to be governed
by the rule in Shelley's case, but is to be controlled by the in-
tention of the testator as expressed in the will, and which in-
tention is to be collected from the whole of it. For this prin-
ciple that every will is to be construed in accordance with the
intention of the testator expressed or implied in it and the other
rules of law properly applicable to it, is now too well settled to
be called in question.

The legal term remainder is nowhere employed by the testator
in the devise we are considering, but the limitations of his estate
in the lands at the decease of his sons, Andrew Rash, Martin
Rash and Joseph Rash, to whom he severally gives them in the
several tracts described in the devise during the natural life of

Doe d. Wright and Wife v. Gooden.

each of them respectively, and no longer, to his daughters, also naming them with equal fullness and particularity, during their natural lives, and no longer, and at the death of his said daughters, to his heirs forever, are each of them in legal contempla- tion and phraseology as much remainders as if he had so desig- nated them in the devise itself, and they must be governed by the legal rules of interpretation and construction applicable to such limitations or remainders, unless it would violate and defeat the expressed intention of the testator to be gathered from the whole of it. Now, it is perfectly manifest upon the face of this devise, that it was the intention of the testator, so far as he has expressed it in the will, in the first place, that each of his three sons, Andrew, Martin and Joseph, should take in severalty the tracts of land described and devised to them respectively, for the term of his life, and no longer, and in the second place, that at the decease of all three of them, his seven daughters, also fully named in the devise, should take all the said land so devised to them, for the term of their natural lives, and no longer, and in the third place, that at the death of his said daughters, his heirs- at-law should take all the said lands so devised to them forever. It certainly would not seem to comport with the intention of the testator as thus expressed in his will, that either of his said three sons should have any interest or estate in the lands so de- vised to them in severalty during their respective lives other than the life estate therein thus given to each of them, or that the said daughters should have any interest or estate in them until the death of all of the said three sons, other than their life estates expectant thereon, and in the third place, that his heirs-at-law should have no interest or estate in them until the death of all of his said daughters. But it would be difficult to execute and carry out that intention in the first place without giving, by implication and construction, to each of the said three sons contingent cross remainders for the life of each of them in the several tracts devised to each of them in severalty during the life of each of them, notwithstanding, by the express terms, nothing more is given to either of them than an estate in the separate tract described and so devised to him for the term

Doe d. Wright and Wife *v.* Gooden.

of his life, and no longer; and this by implication given by successive contingent cross remainders between them, all of the said tracts to the longest liver of the said three sons for the term of life to carry out the intention of the testator as necessarily implied in the express devise to them for life, and devise in remainder on the death of them, to the said daughters during their lives.  And in the next place, it would contravene the well-settled rules of legal construction in such cases to execute and carry out the intention of the testator as expressed in the will, and in the devise of all of the said lands, at the death of his said daughters, to his heirs forever, if we were to hold that his meaning and intention in that devise was that his heirs-at-law were to take no vested interest or estate whatever in them until the death of the last survivor of the said daughters, and it would scarcely contravene those rules of legal construction applicable in such a case on this more than it would conflict with the actual intent of the testator in making these devises, to hold that the final devise to his heirs of the fee simple estate in the lands constituted a contingent remainder, and continued in abeyance for sixty-two years after his death, or until the death of Mrs. Whitby, the last survivor of all the nine devisees for life, in the year 1852, the death of the testator and the probate of the will running back to the year 1790; for he doubtless meant and intended that his heirs-at-law, at the death of his said daughters, should take and have the possession and enjoyment of the said lands, and not an uncertain and unvested interest and estate merely by way of contingent remainder in them until the death of the last survivor of the said daughters, and then to go to such of his heirs-at-law only as might be living at the time of her death.

The counsel for plaintiff has presented the question whether the testator intended, by this devise of his remaining estate in fee in the lands to his heirs on the death of his daughters, to such persons as were his heirs-at-law at the time of his own death, or to such as should afterwards become his heirs-at-law on the death of Mrs. Whitby, the last of the preceding devisees for life of the lands, or, in other words, whether it constituted a

Doe d. Wright and Wife *v.* Gooden.

remainder in fee which vested in his heirs immediately on his death, or a contingent remainder which could vest only in such of them as were living at the time of Mrs. Whitby's death, and who only could then be entitled to it, if such was the intention of the testator; and he has contended that such was the intention of the testator expressed in the will, because by the terms of it, " at the death of his said daughters, he gives the before-mentioned lands to his heirs forever," and which, according to his argument, do not import that they were to have a vested interest or estate in them before that time, but only an uncertain and contingent interest depending on the possibility of their living until that event should happen. But as I before intimated, these terms leave the question as to the intention of the testator in regard to the matter still unsettled and indefinite, for they fail to indicate that he intended anything more than that they should then have the possession, use and enjoyment of the lands as their property forever; and if such was his intention, then, in contemplation of law and according to the well-settled rules of testamentary construction in such cases, the remainder thus devised to his heirs-at-law became a vested remainder immediately on the death of the testator, or a remainder in fee executed in them at the same instant that the estates for life vested in the daughters under the remainder devised to them during their lives, at the decease of his three sons, Andrew, Martin and Joseph, and also at the same instant that the life estates devised to them vested in them, which was immediately on the death of the testator, when the will went into effect, and when his sons, Daniel, Andrew, Martin and Joseph, and his daughters, Sarah, Esther, Ann, Letitia, Ansley and Patience, who all survived him, also at once became his heirs-at-law and tenants in fee of the vested remainder thus devised to them expectant on the determination of all the preceding life estates devised to the last nine of them in the said lands.

The counsel has referred us to numerous authorities on the various points presented in his brief, but, on examination of them, I have failed to find any one of them that sustains the construction contended for by him, based on the particular words

referred to by him, or any equivalent word in a similar devise, as sufficiently indicating an intention on the part of the testator in any such case to delay the vesting or execution of the remainder in the devises to whom it is given, until the decease of the tenant or tenants of the particular estate or estates, for life or lives, on whose death it was thus devised over to them, and so to convert into a contingent remainder, until that event occurred. On the contrary, the settled rule of judicial construction in such cases is otherwise, and the reported cases to be found in the books upon that point are clearly to the same effect. It is also laid down by all the text writers on the subject of vested and contingent remainders that, even in devises the law is averse to contingent limitations, and to holding the fee in land to be in abeyance, and favors the vesting of estates limited in remainder, unless the intention of the testator is apparent upon the face of the will is clearly to the contrary, and does not defer to it when his intention in regard to the matter is itself questionable, doubtful, or uncertain, from the terms used by him in the expression of it in the will or devise in which they occur. And this rule of construction is founded on the best of reasons, because, by the operation of it a present fixed and certain interest in and legal title to the land is given to the person or persons to whom it is devised in remainder on the death of the person or persons to whom it is at the same time devised for life, although it is not to come into the actual possession and enjoyment of the person or persons in remainder until the death of the devisee or devisees· for life, which the latter cannot defeat or destroy by the forfeiture or alienation of their life estate, or anything they may do with it in the meanwhile, but by which a contingent remainder merely might, on the contrary, be defeated and destroyed. Besides, it gives the devisee or devisees in remainder a present vested interest and estate in the land which they can sell and convey, alienate and dispose of, and which becomes liable for their debts as fully and completely as if they were then in actual possession and enjoyment of it on the determination of the life-estate on which it depended, all of which are objects favored in the policy of the law. Until the death of the testator none of the estate

devised in the will had any creation or existence in contempla-
tion of law, but from that moment they all had one common incep-
tion, and, as by the same event, his heirs-at-law to whom the
final remainder is devised forever, became ascertained and cer-
tain, and consisted of all his sons and daughters then living,
for none had died before him leaving any issue, and from that
moment that remainder in fee simple vested in them, and they
became so seized in fee of all the said lands in contemplation
of law, as a vested estate in remainder in them, though by the
terms of the devise they were not to have the possession and en-
joyment of them until the death of all the sisters then living, to
whom they had been devised during their lives, and as that was
an event which in the course of nature would sooner or later
necessarily occur, notwithstanding the time of it was then uncer-
tain, because this has always constituted the fundamental dis-
tinction between a vested and a contingent remainder in law;
the latter, on the contrary, always being limited to take effect
either to a dubious and uncertain person, as to the heir or heirs
of a person then living, or to the survivor of two or more
persons then living, or to a child not then born, or in *ventre
sa mere*, or upon a dubious and uncertain event which may never
occur, or may not happen until after the preceding estate or estates
on which it depends have determined by their own limitation,
as prescribed in the grant or devise.    But, independent of the
legal rule of construction to which I have referred, if there be
any uncertainty as to whether the testator intended his heirs
living at his death, or only those living at the death of his said
daughters, should have the said lands, would it not be more
reasonable to conclude that he intended that those living at his
death should have them, inasmuch, as for reasons satisfactory to
him, but unknown to us, he saw proper to devise them to his
three younger sons for life, and on their decease to all his said
daughters during their lives, and at their death, and on the de-
termination of all these life-estates, to his heirs at law in fee
simple, and who, as it so happened on his death, consisted of these
three sons and six daughters, and his eldest son Daniel, all of
whom survived him, and having omitted him in the devisees for

life ; and in this somewhat peculiar disposition of the bulk of
his whole estate, real and personal, by thus devising, in the first
place, all his lands to the other three sons for life, and in the
next place, to all his daughters for life, with remainder in fee to
all of them, including Daniel, is it not reasonable to conclude, what-
ever may have been his reasons for making such a peculiar disposi-
tion of them in his will, that his purpose was to make an equal di-
vision of them among them all in fee when the life-estates devised
had all expired, and thus, in the end, to equalize the division of his
estate among them, or such of them as might be living at his death,
and their respective heirs-at-law, and not to further increase the
apparent inequality of the original disposition of it among them,
by giving his lands to such of them only as should be living at
the death of his said daughters, and who, as I have before re-
marked, after the long lapse of sixty-two years from his death,
and seventy from the time the will was made, turned out to be
his eldest son and heir, Daniel, who survived all the rest of them ?
Such, however, would be the intention we must impute to him,
if the construction contended for by the counsel for the plaintiffs
be correct and is properly applicable in this case. It would seem
to have been bad enough in the scheme of such devises to cut off
the children and heirs-at-law of each of the devisees for life, as
they died off in succession, from all usufructuary benefit of the
land during the lifetime of the longest liver of them, but it would
be much more so if he intended not only that but to cut off all
of them forever, except the heirs and descendants of the one
who might, by chance, become the sole survivor of his ten chil-
dren who were living at his death. For, as I have before re-
marked, under the first devise the longest liver of the three sons
took all the lands for the term of his life by reason of the con-
tingent cross-remainder implied in it between them, while at their
death the six daughters took them in joint tenancy during their
joint lives, and, of course, all of them by survivorship for the
life of the longest liver of them, as our statute abolishing all
estates in joint tenancy in lands, tenements, and hereditaments,
unless when expressly granted, conveyed, or devised, to be held
as such, was not passed until after the death of the testator. It

Doe d. Wright and Wife *v.* Gooden.

will be observed, however, that neither the word remainder, nor estate, nor even the term devise, occurs anywhere in the will of the testator, but in the simple and ordinary language of one not versed in legal phraseology he gives his lands to the devisees named, in the mode and order mentioned, during their natural lives, and no longer; and again, at the death of his said daughters, he gives the before-mentioned lands to his heirs forever; and, so far as the language of the first two devises express the intention of the testator, the lands were held by all the devisees named strictly in conformity with that intention, for about sixty-two years, or up to the death of Mrs. Whitby, the last survivor of them. But what he meant or intended by the gift of the lands at the death of his daughters to his heirs forever, is not expressed, except so far as the words employed themselves import it, and this is to be ascertained and determined by the settled rules of legal construction applicable in such a case, and the contention of the counsel for the plaintiff is, that by this gift or devise of his land to his daughters during their natural lives, and no longer, and at their death to his heirs forever, the testator intended to give them to his heirs at law only who should be living at the time of the death of the last survivor of them.

But while he has referred us to no authority that sustains that construction in such a case, the counsel for the defendants has cited several adjudged cases in which the decisions were directly to the contrary. In the case of Brown *v.* Lawrence, 3 Cush., 390, the devise was of the rent of a portion of the real estate of the testator to his " son Samuel during his life, and at his decease then to the legal heirs," who consisted at the death of the testator of Samuel, another son and two daughters who survived him, the premises being in the possession of the testator, and not of a tenant at the time of his death ; and the questions were what estate did Samuel take in them, and to whom did they go at his decease under the devise ?

*Shaw,* C. J., delivered the opinion of the court which held that inasmuch as they were not in the possession of a tenant or rented, the devise of the rent of them was equivalent to a devise

of the premises themselves to the son, Samuel, and that he took an immediate estate in them for the term of his life, with remainder to the testator's own heirs, and that his two sons, Samuel being one of them, and his two daughters, therefore, each took a remainder in the one-fourth part of the estate expectant upon the determination of Samuel's life estate. In the case of Minot *v.* Tappan, 122 Mass., 535, the testator devised a portion of his estate to trustees in trust for the benefit of his son A., during his life and if he should leave a widow, for her benefit during her life, and if he should die leaving no widow, but leaving children, the trust estate was to be conveyed and transferred by the trustees to such children and the issue of any deceased children " and in default of any such child, children or issue then living, then in trust to convey and transfer the same to his (the testator's) heirs-at-law, to hold the same to them, their heirs and assigns forever." The son, A., died thirty-four years after the testator without having married, but B., another son of the testator, died before A., leaving a widow and children. The question was whether under the last clause of the devise above quoted, the son, B., took an interest in the trust estate which vested on the death of the testator, and the court held that he did. Also in the case of Dove *v.* Torr, 128 Mass., 38, the devise in question was as follows : " I devise to those of my daughters who shall not have married at my decease, all the residue of my real estate, to have and to hold the same to them and the survivor of them for their lives and during the life of such survivor, they and the survivor of them continuing unmarried ; the marriage of any one of my daughters who take under this item shall terminate her interest and life estate under this devise. After the marriage or death of any surviving daughter taking under this item, the estate herein devised shall descend to those persons who may then be entitled to take the same as my heirs." The question of construction in that case was similar to the question in the case now before us, and the court held that the devise over was to those who were the heirs of the testator at the time of his death, and Gray, C. J., said in delivering the opinion that the word " then " is not here inserted by way of description of the persons who are

to take under the devise, but by way of defining the time when they shall come into the enjoyment of that which is devised to them; nor is the devise to those who would have been the testator's heirs-at-law if he had died at that time. A devise to the testator's "heirs or heirs-at-law" is always construed as referring to those who are such at the time of the testator's death, unless a different intent is plainly manifested by the will. In Mortimer *v.* Slater, 7 Ch. Div., 322, a recent case in the court of chancery in England, a like construction was given to a bequest of personal property. In that case it was held that the bequest in the will of one-fourth of a fund to one of four daughters of the testator for life, and after her death to her children then living, but if she left no child, then the interest on it should be paid to his other daughters then living and the survivors or survivor of them, and after the decease of the last survivor of them that the same fourth share should be divided among her children, or if there should be no such children, that the same should be paid to such person or persons as will then be entitled to receive the same as his next of kin under the statutes for the distribution of intestates' estates. One daughter died after the testator, leaving children; the other three afterwards died without issue, and the court held that the class, or persons then entitled to receive it under the statutes referred to, were to be ascertained at the death of the testator, and that the shares of the daughters who died without issue, to each of whom a similar bequest of a fourth of the fund had been made in the same terms in the will, were divisible in fourths among the persons representing the four daughters.

We are, therefore, of the opinion that the devise in this case of all the lands referred to by the testator, at the death of hi said daughters to his heirs forever, constituted a remainder in fee in them which immediately vested in all his heirs-at-law on his death, and who consisted of all his sons and daughters who survived him and were living at that time, and when it was immediately ascertained in law as a fact that they were then his legal heirs, according to the maxim *nemo est heres vircutis,* and not a contingent remainder which vested only in such of

Doe d. Wright and Wife *v.* Gooden.

them as were living at the time of the death of his last surviving daughter, Mrs. Whitby ; and upon the case stated that the judgment of the court should consequently be entered for the defendants in the action.